1
2
3
4
5
6
7
8                  UNITED STATES DISTRICT COURT

9                  EASTERN DISTRICT OF CALIFORNIA

10

11    BOB STEELE, et al.,                        No.  2:18-cv-02927-TLN-DMC

12              Plaintiffs,

13         v.                                     **ORDER**

14    COUNTY OF TEHAMA, et al.,

15              Defendants.

16

17         This matter is before the Court on Defendants County of Tehama ("County"), Tehama

18    County Sheriff's Office ("Department"), Sheriff Dave Hencratt ("Hencratt"), and Assistant

19    Sheriff Phil Johnston's ("Johnston") (collectively, "Defendants") Motion to Dismiss pursuant to

20    Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 23.)  Per the Court's Order Relating Cases

21    (ECF No. 22), the identical Motion was filed in each related case.[1]  Plaintiffs in the related cases

22    — except the Plaintiffs in Case No. 2:18-cv-03021-TLN-DMC — elected to file a single, joint

23    opposition.  (ECF No. 26.)  Defendants filed a single reply.  (ECF No. 29.)  For the reasons set

24    forth below, the Court GRANTS in part and DENIES in part Defendants' Motion to Dismiss.[2]

---

[1]      The related cases are as follows: 2:18-cv-02916-TLN-DMC (Phommathep); 2:18-cv-
02927-TLN-DMC (Steele); 2:18-cv-02918-TLN-DMC (Woods); 2:18-cv-02912-TLN-DMC
(McFadyen); 2:18-cv-02917-TLN-DMC (A.H.); 2:18-cv-03021-TLN-DMC (Cardenas).

[2]      In line with its instruction to file a single motion for all cases and to ensure the continuity
of these cases, the Court has entered identical orders in 2:18-cv-02916 (Phommathep); 2:18-cv-

1

1    **I.     FACTUAL AND PROCEDURAL BACKGROUND**

2         A.     <u>General allegations applicable to all related cases</u>[3]

3    On November 14, 2017, Kevin Neal ("Neal") murdered at least five people and wounded

4    at least a dozen more.  A number of these victims filed lawsuits.  Bob Steele, Michael Elliott,

5    G.E., and M.E. filed an action as co-plaintiffs (the "Steele Plaintiffs"); Troy McFadyen, Phillip

6    Bow, and Sia Bow filed an action as co-plaintiffs (the "McFadyen Plaintiffs"); Tiffany

7    Phommathep, John Phommathep Sr., J.P., J.P.II, and N.P. filed an action as co-plaintiffs (the

8    "Phommathep Plaintiffs"); James Woods, Jr. and James Woods, Sr. filed an action as co-plaintiffs

9    (the "Woods Plaintiffs"); and A.H. filed an action (all Plaintiffs in all actions are collectively

10   referred to herein as "Plaintiffs").

11        The Plaintiffs in each specified action allege a common set of facts in addition to case

12   specific facts.  The common set of facts, or "General Allegations," are as follows.  On January 31,

13   2017, Neal was arrested and charged with assault with a deadly weapon, false imprisonment with

14   violence, and willful discharge of a firearm in a grossly negligent manner.  On April 7, 2017, a

15   Civil Harassment Restraining Order was issued against Neal which prohibited him from

16   possessing any gun or ammunition.  The restraining order included language mandating any

17   sworn officer with knowledge of the restraining order arrest Neal if he was discovered with guns

18   or ammunition.  Neal only turned over one firearm after being served with the restraining order.

19        The Complaints allege a number of reports to the Sheriff's Department regarding Neal's

20   possession of guns including: a report from his girlfriend that she was missing a firearm; a

21   complaint on August 21, 2017, by Neal's neighbor Diana Steele that Neal was shooting a shotgun

---

23   02927 (Steele); 2:18-cv-02918 (Woods); 2:18-cv-02912 (McFadyen); and 2:18-cv-02917 (A.H.).
24   These complaints allege similar causes of action.  However, because there are facts individual to
     each group of plaintiffs, some matters discussed in this order may not apply to this specific group.
25   The final related case with a pending motion to dismiss, 2:18-cv-03021 (Cardenas), is discussed
     in a separate order as the Complaint alleges different causes of actions and the Plaintiffs elected
26   to file a separate opposition.

27   [3]     The following recitation of facts is derived from the "general allegations" section of
     Plaintiffs' Complaint (ECF No. 1).  The "general allegations" sections are the same in each
28   related Complaint discussed herein.

2

towards her home; and an October 21, 2017 complaint by a different neighbor of gunshots and screams coming from Neal's house.  After each of these reports, Plaintiffs assert law enforcement either did not respond or responded briefly but did not make contact with Neal.  Plaintiffs also allege ammunition could be seen on Neal's property from the public road.  While not detailing each of them, Plaintiffs assert at least nine different people complained to Defendants and their employees regarding Neal's violent tendencies including a call from Neal's family members "shortly before the shooting" informing Defendants that Neal was mentally unstable, deteriorating, and had illegal firearms.

Plaintiffs allege that the Department not only failed to follow up on complaints about Neal, but actively discouraged them by threatening to arrest those reporting Neal if they continued to call the Department.  Defendants allegedly told one complainant to "mind [her] own damn business," responded to the reports by stating that so long as Neal was shooting guns in a safe manner there was nothing the Department could do, and refused to log calls regarding Neal in the official log.  Plaintiffs draw the conclusion that this conduct by Defendants created an atmosphere where victims were too afraid of retaliation by Neal and Defendants to call law enforcement to report additional violations and that Defendants' actions emboldened Neal and thus created additional danger for Plaintiffs.

B.    Allegations specific to the Steele Plaintiffs[4]

On January 31, 2017, Neal attacked Diana Steele (deceased) and Hailey Poland near Neal's property, shooting at them six times with an illegally modified Bushmaster AR-15 assault rifle.  Neal punched Diana Steele and stabbed Hailey Poland with a 10-inch knife.  As a result, the criminal protective order discussed above was issued against Neal and in protection of Diana Steele and Hailey Poland on February 28, 2017.  On March 17, 2017, the permanent Civil Harassment Restraining Order was issued against Neal in protection of Hailey Poland and Plaintiffs Bob Steele, G.E., Diana Steele, and Danny Elliott II.

///

---

[4]     The following recitation of facts is derived from the Steele Complaint.  (ECF No. 1.)

Between February 2017 and November 14, 2017, Diana Steele and Daniel Elliott II contacted the Department to report violations of the restraining orders.  The Department ignored those complaints and threatened to arrest Diana Steele and Danny Elliott if they continued to call regarding Neal.

On November 14, 2017, Neal shot and killed Daniel Elliott II and Diana Steele in their front yard before proceeding to drive to Rancho Tehama Elementary School intending to kill G.E. Bob Steele was inside his home and heard the shots that killed Diana Steele and Daniel Elliott II.

C.      Allegations specific to the Phommathep Plaintiffs[5]

On November 14, 2017, Tiffany Phommathep was driving her children to school.  Neal rear-ended her vehicle before passing her and shooting into the car.  The Phommathep Plaintiffs present in the car sustained severe injuries: Tiffany Phommathep was shot four times from behind in her left shoulder; J.P.II was shot two times in the left calf; J.P. was shot in the left foot; and N.P. sustained multiple injures including cuts from broken glass.

D.      Allegations specific to the Woods Plaintiffs[6]

On November 14, 2017, Neal shot at the Woods Plaintiffs after rear-ending their vehicle. James Woods, Jr. sustained a gunshot wound to his face and James Woods, Sr. sustained injury from shrapnel hitting his left cheekbone, under his right eye, and his ear.

E.      Allegations specific to the McFadyen Plaintiffs[7]

On November 14, 2017, Troy McFadyen was driving with Michelle McFadyen as passenger.  Neal, driving the opposite direction, swerved and struck the McFadyens' car head-on, causing it to go off the road into a drainage ditch.  Neal then shot at Troy and Michelle McFadyen as they tried to exit their car.  After Neal left, police arrived at the scene and mistook Troy McFadyen for the shooter.  The McFadyen Complaint states that officers "detained" Troy and Michelle McFadyen.  Once officers determined Troy McFadyen was not the shooter, they

---

[5]      The following recitation of facts is derived from the Phommathep Complaint.

[6]      The following recitation of facts is derived from the Woods Complaint.

[7]      The following recitation of facts is derived from the McFadyen Complaint.

1    abandoned him and Michelle McFadyen without summoning medical assistance.  Michelle

2    McFadyen died on-scene as a result of her injuries.  A bystander saw Troy McFadyen, moved

3    him into the back of the bystander's garbage truck, and transported him to the hospital.

4              F.    Allegations specific to A.H.[8]

5         On November 14, 2017, Neal shot A.H. while A.H. was in his classroom at Rancho

6    Tehama Elementary School.  A.H. sustained a gunshot wound to his chest and right foot.  Bullet

7    fragments remain lodged in his chest.

8         **II.    STANDARD OF LAW**

9         Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain

10   statement of the claim showing that the pleader is entitled to relief."  *See Ashcroft v. Iqbal*, 556

11   U.S. 662, 678–79 (2009).  Under notice pleading in federal court, the complaint must "give the

12   defendant fair notice of what the claim...is and the grounds upon which it rests."  *Bell Atlantic v.*

13   *Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).  "This simplified notice

14   pleading standard relies on liberal discovery rules and summary judgment motions to define

15   disputed facts and issues and to dispose of unmeritorious claims."  *Swierkiewicz v. Sorema N.A.*,

16   534 U.S. 506, 512 (2002).

17        On a motion to dismiss, the factual allegations of the complaint must be accepted as

18   true.  *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court must give the plaintiff the benefit of every

19   reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail*

20   *Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege

21   "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to

22   relief."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads

23   factual content that allows the court to draw the reasonable inference that the defendant is liable

24   for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544, 556 (2007)).

25   ///

26   ///

27

28   [8]        The following recitation of facts is derived from the A.H. Complaint.

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the...laws in ways that have not been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). Only where a plaintiff fails to "nudge[ ] [his or her] claims...across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. See *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir.

6

1995)); see also *Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of

discretion in denying leave to amend when amendment would be futile).  Although a district court

should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's

discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended

its complaint[.]"  *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir.

2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

### III.  ANALYSIS

This is a case grounded in tragic circumstances.  The question for the Court at this stage,

however, is not if these victims were harmed, but rather whether county entities and officials can

be held liable for that harm.  Plaintiffs bring numerous causes of action against the County

Defendants.  The claims relevant to this motion are as follows.  Three of the causes of action are

brought pursuant to 42 U.S.C. § 1983: violation of due process under the Fourteenth Amendment;

violation of equal protection under the Fourteenth Amendment; and failure to train or supervise.

Two causes of action are brought under 42 U.S.C. § 1985 for conspiracy to deprive persons of

rights or privileges and conspiracy to obstruct justice.  One cause of action is brought for

neglecting to prevent harm pursuant to 42 U.S.C. § 1986.  Plaintiffs also bring various causes of

action based in state law including: public entity liable for failure to discharge a mandatory duty

in violation of California Gov. Code § 815.6; Tom Bane Civil Rights Act in violation of

California Civ. Code § 52.1; negligent supervision, training, retention, and ratification;

negligence in violation of California Gov. Code § 815.2; and waste of public funds in violation of

California Civ. Code § 526a.  Plaintiffs also bring a public and private nuisance claim.  The

Steele and McFadyen Plaintiffs bring an additional claim for intentional infliction of emotional

distress.  Finally, the McFadyen Plaintiffs bring a cause of action for cruel and unusual

punishment in violation of the Eighth Amendment and one for unlawful detention/false arrest.

Defendants do not challenge the remaining causes of action in their Motion.

///

///

///

7

1

A.    Standing

2      As an initial matter, Defendants argue that a number of the Plaintiffs do not have standing

3 to bring many of these claims.  While Defendants do not specify which Plaintiffs may lack

4 standing nor which causes of action they might be unable to bring, it appears Defendants are only

5 challenging the survival action brought by the children of Michelle McFadyen.  Therefore, the

6 following analysis only applies to the McFayden Complaint.

7            A claim under 42 U.S.C. § 1983 survives the decedent if the claim
            accrued before the decedent's death, and if state law authorizes a
8            survival action.  See 42 U.S.C. § 1988(a); *Moreland v. Las Vegas
            Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir.1998).   Under
9            California law, if an injury giving rise to liability occurs before a
            decedent's death, then the claim survives to the decedent's estate.
10           See Cal. Civ. P. Code § 377.30. Where there is no personal
            representative for the estate, the decedent's "successor in interest"
11           may prosecute the survival action if the person purporting to act as
            successor in interest satisfies the requirements of California law . . .
12           . See Cal. Civ. P. Code §§ 377.30, 377.32.

13 *Tatum v. City & Cty. of San Francisco*, 441 F.3d 1090, 1094 (9th Cir. 2006)

14      Plaintiffs filed affidavits of their personal representative capacity in an attempt to comply

15 with Cal. Code Civ. Proc. § 377.32 at the time they filed their oppositions.  However, the Court

16 agrees that the specifics of which Plaintiffs have standing to bring which causes of action remain

17 unclear and are not pleaded with particularity in the Complaints.  The majority of the causes of

18 action are dismissed with leave to amend for the reasons described below.  Because California

19 allows a successor-in-interest to bring survivor claims, there is a possibility that any existing

20 standing issues may be cured by amendment.  *Lopez*, 203 F.3d at 1130.  Therefore, the Court will

21 allow Plaintiffs to amend their Complaints to clarify their standing to assert certain claims.[9]

22 Further, should one Plaintiff in each action be able to assert standing, the case may proceed.  The

23 Court need not make a standing determination for each individual.  *See Leonard v. Clark*, 12 F.3d

24 885, 888 (9th Cir. 1993), as amended (Mar. 8, 1994) (citing *Carey v. Population Services Int'l*,

25 431 U.S. 678, 682 (1977)) ("The general rule applicable to federal court suits with multiple

26 ───────────────────

27 [9]     "[A] party bringing a survival action has standing if she carries the burden of
demonstrating that state law authorizes a survival action and that she meets the requirements for
bringing such an action. *Estate of Elkins v. Pelayo*, No. 1:13-CV-1483 AWI SAB, 2020 WL
28 2571387, at *3 (E.D. Cal. May 21, 2020)

1    plaintiffs is that once the court determines that one of the plaintiffs has standing, it need not

2    decide the standing of the others"). Defendants are not precluded from bringing this argument in

3    a future motion to dismiss should Plaintiffs fail to sufficiently allege facts showing at least one

4    Plaintiff has standing to bring the survival actions.

5                              B.    Due Process Claim

6           Plaintiffs' First Cause of action is asserted against Tehama County, Tehama Sheriff's

7    Office, Hencratt, and Johnston for violation of due process under the Fourteenth Amendment.

8    Generally, there is no duty on the part of government entities to protect the life, liberty, and

9    property of its citizens against invasion by private parties. *DeShaney v. Winnebago Cty. Dep't of*

10   *Soc. Servs.*, 489 U.S. 189, 195 (1989). However, there are two exceptions to this general rule:

11   "(1) the 'special relationship' exception; and (2) the 'danger creation' exception." *L.W. v.*

12   *Grubbs*, 974 F.2d 119, 121 (9th Cir. 1992). Defendants argue Plaintiffs cannot establish either of

13   these exceptions.

14                              i.   State Created Danger

15          In order to prevail under a state created danger theory, a plaintiff must show (1) there was

16   "affirmative conduct on the part of the state in placing the plaintiff in danger" and (2) the state

17   acted with "deliberate indifference" to a "known or obvious danger." *Patel v. Kent Sch. Dist.*,

18   648 F.3d 965, 974 (9th Cir. 2011) (citing *Munger v. City of Glasgow Police Dep't*, 227 F.3d

19   1082, 1086 (9th Cir. 2000) and *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996)).

20          Plaintiffs argue the first step is met because officers "actively ignored credible complaints

21   about Neal" and officers threatened Neal's victims for reporting crimes. (ECF No. 26 at 16.) In

22   support of this assertion, Plaintiffs analogize to *Dwares v. City of New York*, 985 F.2d 94 (2nd

23   Cir. 1993) and *Pena v. DePrisco*, 432 F.3d 98 (2nd Cir. 2005).[10] However, these cases are not

24   controlling and are easily distinguishable in any event. In *Dwares*, the complaint alleged police

25

26   [10]    Plaintiffs also cite *Freeman v. Ferguson*, 911 F.2d 52 (8th Cir. 1990), however, the
     procedural posture of *Freeman* makes it inapplicable here. In *Freeman* the circuit court

27   overturned the district court's decision to dismiss the complaint without leave to amend. The
     circuit court did not explicitly find that the additional facts argued on appeal would save the

28   complaint, but rather found the plaintiffs should have the opportunity to amend.

                                             9

1   told the third-party attackers that police would not interfere with the attack unless it got

2   "completely out of control." *Dwares*, 985 F.2d at 97.  In *Pena*, a police officer killed a number of

3   people while driving intoxicated.  *Pena*, 432 F.3d 98.  The complaint in that case alleged fellow

4   officers and supervisors failed to intervene, which the circuit court explicitly found insufficient to

5   state a claim under a state created danger theory.  The circuit court did, however, find a sufficient

6   allegation that the officer was encouraged to inappropriately and excessively drink alcohol.  *Pena*,

7   *432* F.3d at 111.  The Second Circuit noted that "the key question is whether the individual

8   defendants told, or otherwise communicated to, [the officer] that he could drink excessively and

9   drive while intoxicated without fear of punishment." *Id.  Pena* established that the state actor

10   must communicate with the individual who perpetrated the harm in order to be liable under §

11   1983.  *Id*.  In both *Pena* and *Dwares* the state actor had direct contact with the third-party

12   assailant, indicating to them that no action would be taken to prevent, stop, or punish their

13   misconduct.  Here, Plaintiffs fail to plead any facts indicating that officers had any contact with

14   Neal as a result of the complaints made against him.  Indeed, the Complaint asserts officers'

15   failure to contact Neal is exactly the conduct, or lack thereof, which allegedly created the danger.

16   A lack of contact with the assailant is insufficient to establish a state created danger.

17           As for controlling authority, both parties cite *Kennedy v. City of Ridgefield*, 439 F.3d 1055

18   (9th Cir. 2006).  In *Kennedy*, the officer in question informed the assailant of a complaint made

19   against him by his neighbor.  The officer knew of the assailant's violent history, including

20   breaking and entering, and of the neighbor's fear of retribution.  That same night, the assailant

21   broke into the neighbor's house, shot her, and shot and killed her husband.  The court found these

22   facts sufficient to allege affirmative conduct on the part of the officer placing the neighbor in

23   danger she would not have otherwise faced.  In *Kennedy*, unlike the allegations in the Complaints

24   here, the officer took an affirmative action: contacting the assailant.  The Complaints here do not

25   allege any affirmative actions; the closest they come is alleging that unnamed officers threatened

26   to arrest the individuals filing complaints against Neal.  While such a statement by officers is

27   objectionable, it is insufficient to allege an affirmative act that placed the victims in a more

28   dangerous position.  Regardless of this conduct, Neal was, and would have remained, a dangerous

                                                    10

1   individual prone to violent behavior.  Further, the officers' failure to enforce the restraining

2   orders or follow up directly with Neal regarding the complaints against him are examples of

3   inaction, not affirmative conduct, and are insufficient to state a claim under the state created

4   danger theory.

5          The Court need not reach the question of deliberate indifference because the Complaints

6   fail to allege affirmative acts by Defendants placing Plaintiffs in danger.  Further, because these

7   claims are all based on the same set of facts in each complaint, none of the Plaintiffs have stated

8   sufficient facts to allege a violation of the Fourteenth Amendment based on a state created danger

9   theory.  Because the defects described above could be cured by amendment, such dismissal is

10  with leave to amend.  *Lopez*, 203 F.3d at 1130.

11                          *ii.   Special Relationship*

12         The Steele Plaintiffs and the McFadyen Plaintiffs additionally claim a violation of the

13  Fourteenth Amendment based on a special relationship theory.  "The [special relationship]

14  exception applies when a state 'takes a person into its custody and holds him there against his

15  will.'  The types of custody triggering the exception are 'incarceration, institutionalization, or

16  other similar restraint of personal liberty.'"  *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 972 (9th Cir.

17  2011) (quoting *DeShaney*, 489 U.S. at 198–202).  A state's "knowledge of [a plaintiff's] plight

18  and its expressions of intent to help — absent some type of state-imposed limitation on that

19  plaintiff's freedom — is not enough to give rise to the exception."  *Balistreri v. Pacifica Police*

20  *Dep't*, 901 F.2d 696, 700 (9th Cir. 1990) (quoting *DeShaney*, 489 U.S. at 198–199).  "The

21  affirmative duty to protect arises not from the State's knowledge of the individual's predicament

22  or from its expressions of intent to help him, but from the limitation which it has imposed on his

23  freedom to act on his own behalf."  *Id.*  As discussed below, the Court finds the Steele Plaintiffs

24  and McFadyen Plaintiffs have failed to state a claim under this second theory.

25                  *1.   The Steele Plaintiffs' Alleged Special Relationship*

26         The Steele Plaintiffs allege a special relationship based on their status as protected persons

27  under the restraining orders issued against Neal.  While neither party cites *Balistreri* for this issue,

28  it is directly on point.  *Balistreri*, 901 F.2d 696.  In *Balistreri*, the plaintiff alleged a special

11

1    relationship with the state such that it owed her a duty to protect her from her abusive ex-husband

2    because officers had knowledge of threats against her and the state issued a restraining order

3    against the ex-husband and in protection of the plaintiff.  *Id.*  However, the court found that under

4    the reasoning in *DeShaney*, knowledge of the plaintiff's predicament and expressions of intent to

5    help — in the form of a restraining order — are insufficient to create a duty to protect without

6    some additional allegation that the state imposed on the plaintiff's ability to act on her own

7    behalf.  *Id.* at 700.

8         The Steele Plaintiffs do not allege any facts indicating the County Defendants abridged

9    their freedom to act on their own behalf.  They were not arrested, nor in custody.  As the Steele

10   Plaintiffs are claiming that the existence of the protective order is sufficient to establish a special

11   relationship, this case is directly analogous to *Balistreri* in that context.  However, under

12   *Balistreri*, the mere existence of a restraining order does not, without more, establish a special

13   relationship.  Because the Steele Plaintiffs do not allege facts indicating Defendants restrained

14   them in some way from acting on their own behalf, the Steele Plaintiffs have failed to state a

15   claim for violation of their substantive Fourteenth Amendment rights based on a special

16   relationship theory.  Further, as Defendants rightly argue, there is no due process right to the

17   enforcement of a restraining order.  *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 768

18   (2005).  Accordingly, as to the Steele Plaintiffs, Defendants' motion to dismiss the First Cause of

19   Action is GRANTED.  Because the defects described above could be cured by amendment, such

20   dismissal is with leave to amend.  *Lopez*, 203 F.3d at 1130.

21                    *2.  The McFadyen Plaintiffs' Alleged Special Relationship*

22        Unlike the Steele Plaintiffs, the McFadyen Plaintiffs allege officers detained them after

23   they were shot by Neal.  In the Complaint, the McFadyen Plaintiffs allege they were not free to

24   leave the scene of the shooting for an unspecified amount of time, and then were abandoned by

25   the officers once the officers determined Troy McFadyen was not the shooter.  The McFadyen

26   Plaintiffs assert that because of this temporary detention, a special relationship was established

27   such that officers owed the McFadyen Plaintiffs a duty to protect them and obtain medical care

28   for them.

12

1    Taking all facts pleaded as true, the McFadyen Complaint would be sufficient to state a

2  claim for violation of their Fourteenth Amendment rights by the officers who held them at

3  gunpoint under a special relationship theory.  Not only do the McFadyen Plaintiffs allege that

4  officers were aware of their predicament and injuries, they also allege the officers detained Troy

5  and Michelle McFadyen such that Troy and Michelle were not free to leave and seek medical

6  help, thereby limiting Troy and Michelle McFadyen's ability to act on their own behalf.  This

7  meets the standard put forth in *Balistreri*, 901 F.2d 696.  As alleged, however, Plaintiffs fail to

8  state a cause of action against Defendants because municipalities and supervisors cannot be held

9  vicariously liable for the actions of their employees or subordinates under § 1983.  Plaintiffs have

10  not stated facts which would implicate *Monell* liability on the part of the County because they

11  have not asserted policies or practices that were the driving force behind the deprivation.  *Monell*

12  *v. Department of Social Services*, 436 U.S. 658, 691 (1978).  Further, Plaintiffs have not alleged

13  personal involvement in the constitutional deprivation, or a sufficient causal connection between

14  Hencratt or Johnston's wrongful conduct and the constitutional violation.  *Hansen v. Black*, 885

15  F.2d 642, 645–46 (9th Cir. 1989).  Accordingly, as to the McFadyen Plaintiffs, Defendants'

16  motion to dismiss the First Cause of Action is GRANTED.  The Phommathep Plaintiffs, the

17  Woods Plaintiffs, and A.H. do not attempt to assert the special relationship theory, therefore as to

18  those Complaints, the Court GRANTS Defendants' motion to dismiss the First Cause of Action.[11]

19  Because the defects described above could be cured by amendment, such dismissal is with leave

20  to amend.  *Lopez*, 203 F.3d at 1130.

21  ///

22  ///

23  ///

24  ///

---

25  [11]    The Court further notes that should Plaintiffs be able to establish a constitutional violation

26  under this theory, the County and Department can only be held liable if there is a municipal
policy or practice which was the driving force behind the deprivation, or, on the part of Hencratt

27  and Johnston, if they had a personal involvement in the deprivation or if their wrongful acts were
sufficiently causally related to the deprivation.  *Monell v. Department of Social Services*, 436 U.S.

28  658, 691 (1978); *Hansen v. Black*, 885 F.2d 642, 645–46 (9th Cir. 1989).

1

C.     Equal Protection Claim

2      Plaintiffs correctly assert in their opposition that Defendants do not challenge the Second

3 Cause of Action for violation of equal protection under the Fourteenth Amendment.  In reply,

4 Defendants claim that the equal protection argument is "part and parcel" with their arguments

5 regarding "*DeShaney*, *Castle Rock*, and *Zelig*."  (ECF No. 29 at 26.)  This argument is

6 unpersuasive.  In order to make out an equal protection violation, a plaintiff must "demonstrate

7 that enforcement had a discriminatory effect and the police were motivated by a discriminatory

8 purpose." *Rosenbaum v. City & Cty. of San Francisco*, 484 F.3d 1142, 1152 (9th Cir. 2007).

9 This is a standard unique from those discussed regarding special relationship and state created

10 danger theories of Fourteenth Amendment due process violations.  Defendants failed to discuss

11 this standard and thus did not challenge the Second Cause of Action in their Motion.  Instead,

12 Defendants cite the appropriate test for an equal protection violation claim for the first time in

13 their reply and assert that Plaintiffs have failed to allege facts showing purposeful discrimination.

14 Defendants further argue the Equal Protection Clause does not entitle a person to "adequate, or

15 indeed to any, police protection*." Hilton v. City of Wheeling*, 209 F.3d 1005, 1007 (7th Cir.

16 2000).  Defendants may not bring these arguments for the first time in reply. *Zamani v. Carnes*,

17 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the

18 first time in a reply brief").[12]  To the extent Defendants seek to dismiss this cause of action, the

19 Motion is DENIED.

20

D.     McFadyen Plaintiffs' Eighth Amendment Cruel and Unusual Punishment

21

Cause of Action

22      The McFadyen Plaintiffs bring a claim for cruel and unusual punishment in violation of

23 the Eighth Amendment.  They assert responding officers failed to provide medical care or aid

24 while Troy and Michelle McFadyen were detained at gunpoint and the responding officers

25 ultimately abandoned them.  But "[t]he Eighth Amendment applies 'only after the State has

26 complied with the constitutional guarantees traditionally associated with criminal prosecutions....

27

---

28 [12]     While the Court does not consider Defendants' argument here, it is not apparent that
Plaintiffs have stated sufficient facts to survive a motion to dismiss, should one be brought.

1   [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned

2   until after it has secured a formal adjudication of guilt in accordance with due process of law.'"

3   *DeShaney*, 489 U.S. at 199, n. 6 (quoting *Ingraham v. Wright*, 430 U.S. 651, 671–672, n. 40

4   (1977)).  The McFadyen Plaintiffs therefore do not and cannot state a cause of action under the

5   Eighth Amendment because they were not imprisoned after being found guilty of a crime.

6   Rather, the Supreme Court has expanded the rights afforded to prisoners under the Eighth

7   Amendment to other kinds of detainees under the Fourteenth Amendment, which is the proper

8   basis for the claims asserted by the McFadyen Plaintiffs.  *DeShaney*, 489 U.S. at 199.  Because

9   there is no allegation that the McFadyen Plaintiffs were imprisoned subsequent to a formal

10  adjudication of guilt this claim as asserted under the Eighth Amendment must fail.

11          This cause of action also fails because it is brought against the County, Department,

12  Hencratt, and Johnston.  These municipal defendants can only be held liable for constitutional

13  violations based on a theory of *Monell* liability and Hencratt and Johnston cannot be held liable

14  under § 1983 for the actions of their subordinates on supervisory theory as discussed below.

15          Therefore, Defendants' motion to dismiss this cause of action is GRANTED.  Because the

16  McFadyen Plaintiffs cannot allege facts consistent with the current pleading to support a claim

17  under the Eighth Amendment — and in light of the fact the McFayden Plaintiffs assert a claim

18  under the appropriate Fourteenth Amendment elsewhere — dismissal is without leave to amend.

19                  E.      McFadyen Plaintiffs' Fourth Amendment Violation Cause of Action

20          The McFadyen Plaintiffs also allege a violation of the Fourth Amendment for unlawful

21  detention, false arrest, unreasonable seizure, and excessive force.  The Fourth Amendment is not

22  "a guarantee against *all* searches and seizures, but only against *unreasonable* searches and

23  seizures."  *United States v. Sharpe*, 470 U.S. 675, 682 (1985) (emphasis in original).  In

24  evaluating the reasonableness of a stop, courts examine "whether the officer's action was justified

25  at its inception, and whether it was reasonably related in scope to the circumstances which

26  justified the interference in the first place."  *Terry v. Ohio*, 392 U.S. 1, 20 (1968).

27  ///

28  ///

1    As a preliminary matter, Defendants cannot be held liable for the actions of individual

2    officers on a *respondeat superior* or vicarious liability theory under § 1983, discussed in more

3    detail below.  *Monell*, 436 U.S. at 691; *Hansen*, 885 F.2d at 645–46.  As a result, Plaintiffs have

4    failed to plead any facts which would allow them to bring this cause of action against Defendants.

5    Further, the McFadyen Plaintiffs have failed to state a claim of unlawful detention against

6    unnamed officers. "The Fourth Amendment applies to seizures of the person, including brief

7    investigatory stops …. An investigatory stop must be justified by some objective manifestation

8    that the person stopped is, or is about to be, engaged in criminal activity." *United States v.*

9    *Cortez*, 449 U.S. 411, 417 (1981).  The McFadyen Complaint alleges officers responding to

10   Neal's violent rampage arrived at the location of Neal's attack on Troy and Michelle McFadyen

11   and detained Troy and Michelle.  The Complaint further alleges "[a]fter determining that plaintiff

12   Troy McFadyen was a victim, and not the shooter, the sheriffs abandoned him and Michelle

13   McFadyen."  (2:18-cv-02912-TLN-DMC ECF No. 1 at ¶ 23.)  While the McFadyen Plaintiffs

14   have alleged they were detained, based on the facts alleged, this brief detention was objectively

15   reasonable.  Officers were responding to an ongoing shooting incident and arrived at the location

16   the shooting had most recently occurred.  There, they briefly stopped Troy and Michelle

17   McFadyen in order to determine they were not the culprits in the shootings.  Therefore, the

18   officers' action was justified in its detention, and its length and force were reasonably related to

19   the scope of the circumstances.  *Terry* 392 U.S. at 20.

20   The McFadyen Plaintiffs have also failed to plead facts sufficient to state a claim for false

21   arrest as the facts alleged constitute an investigatory stop at most, not an arrest.  The McFadyen

22   Plaintiffs cite *Washington v. Lambert*, 98 F.3d 1181, 1186 (9th Cir. 1996) to argue there was an

23   actual arrest.  The totality of the circumstances must be taken into account to determine if a stop

24   was an arrest.  "In looking at the totality of the circumstances, [courts] consider both the

25   intrusiveness of the stop, i.e., the aggressiveness of the police methods and how much the

26   plaintiff's liberty was restricted, and the justification for the use of such tactics, i.e., whether the

27   officer had sufficient basis to fear for his safety to warrant the intrusiveness of the action taken."

28   *Id.* at 1185 (internal citations and quotation omitted).  The McFadyen Complaint asserts Troy and

16

1  Michelle were detained and "[d]ring his [sic] detention, neither TROY nor MICHELLE

2  MCFADYEN were free to leave."  (2:18-cv-02912-TLN-DMC ECF No. 1 at ¶ 23.).  The

3  Complaint does not allege Troy and Michelle were held at gunpoint, nor any other facts

4  supporting their conclusion that they were not free to leave.  The McFadyen Complaint does

5  allege that officers arrived after Neal shot at Troy and Michelle.  Based on the facts alleged, the

6  aggressiveness of the officers' methods and intrusiveness of the stop were within reason given the

7  totality of the circumstances.  Taking these facts in the light most favorable to Plaintiffs, the

8  Court finds Plaintiffs have not plausibly alleged an actual arrest was made, and therefore no

9  probable cause analysis is needed.

10      For these reasons, Defendants' motion to dismiss this cause of action is GRANTED.

11  Because the defects described above could be cured by amendment, such dismissal is with leave

12  to amend.  *Lopez*, 203 F.3d at 1130.

13               F.      *Monell* and supervisory liability

14      Plaintiffs assert a separate cause of action for failure to train/supervise and ratification of

15  procedures in violation of 42 U.S.C. § 1983 based on their Fourteenth Amendment, state created

16  danger allegations.  The Complaints allege the County, Department, Hencratt, and Johnston failed

17  to adequately train employees regarding the "plain view doctrine," how to respond to violations

18  of restraining orders, how to obtain search warrants, and how to protect citizens from known

19  threats of danger, thereby infringing on Plaintiffs' constitutional rights.  Defendants assert this

20  cause of action should be dismissed because there is no supervisory liability under § 1983, failure

21  to train does not amount to § 1983 liability, and the Complaints fail to allege a policy that would

22  open Defendants to liability under a *Monell* theory.

23      Municipalities cannot be held vicariously liable for the unconstitutional acts of their

24  employees based solely on a *respondeat superior* theory.  *Monell v. Department of Social*

25  *Services*, 436 U.S. 658, 691 (1978).  Rather, municipalities are only "responsible for their own

26  illegal acts."  *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986).  "In order to establish municipal

27  liability, a plaintiff must show that a 'policy or custom' led to the plaintiff's injury.  The Court

28  has further required that the plaintiff demonstrate that the policy or custom of a municipality

1  'reflects deliberate indifference to the constitutional rights of its inhabitants.'"  *Castro v. Cty. of*

2  *Los Angeles*, 833 F.3d 1060, 1073 (9th Cir. 2016) (quoting *Monell*, 436 U.S. 658 and *City of*

3  *Canton v. Harris*, 489 U.S. 378, 392 (1989)).

4      Similarly, "[u]nder Section 1983, supervisory officials are not liable for actions of

5  subordinates on any theory of vicarious liability."  *Hansen v. Black*, 885 F.2d 642, 645–46 (9th

6  Cir. 1989).  However, "[a] supervisor may be liable if there exists either (1) his or her personal

7  involvement in the constitutional deprivation, or (2) a sufficient causal connection between the

8  supervisor's wrongful conduct and the constitutional violation."  *Id.*

9      While Plaintiffs have pointed to policies, practices, and actions on the part of Hencratt and

10  Johnston relating to training officers on the "'plain view' doctrine, how to respond to violations

11  of restraining orders, obtain search warrants, and protect its citizens from known threats of

12  danger"  (ECF No. 1 at ¶ 58), Plaintiffs' cause of action fails because, as discussed above, they

13  have failed to plead an underlying constitutional violation.  Without a constitutional violation,

14  Plaintiffs have no claim against anyone, including the County, Department, Hencratt, and

15  Johnston.  Therefore, the motion to dismiss this cause of action, insofar as it may stand on its

16  own, is GRANTED.  Because the defects described above could be cured by amendment, such

17  dismissal is with leave to amend.  *Lopez*, 203 F.3d at 1130.

18          G.      Qualified Immunity

19      Qualified immunity protects government officers from "liability for civil damages insofar

20  as their conduct does not violate clearly established statutory or constitutional rights of which a

21  reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson*

22  *v. Callahan*, 555 U.S. 223, 231 (2009).  Qualified immunity questions are to be resolved at the

23  "earliest possible stage in litigation" because qualified immunity is "an immunity from suit rather

24  than a mere defense to liability."  *Pearson*, 555 U.S. 231–2; *Mitchell v. Forsyth*, 472 U.S. 511,

25  526 (1985).

26  ///

27  ///

28  ///

18

1   In determining qualified immunity, courts must ask: (1) taken in the light most favorable

2   to the party asserting the injury, do the facts alleged show the officer's conduct violated a

3   constitutional right (*Saucier v. Katz*, 533 U.S. 194, 201 (2001)) and (2) whether the right was

4   "clearly established" at the time of the alleged misconduct (*Pearson*. 555 U.S. at 223–25).

5   As set forth above, Plaintiffs' § 1983 claims have been dismissed on other grounds,

6   therefore, the Complaint as it stands fails to allege a constitutional violation.  Because of this, the

7   Court need not analyze whether certain clearly established rights existed at the time of the alleged

8   misconduct.  However, because the Court has granted Plaintiffs leave to amend the majority of

9   their § 1983 claims, it would be premature to grant a motion to dismiss based on qualified

10   immunity independent from the failure to state a violation in and of itself.   If and when Plaintiffs

11   successfully amend to allege a constitutional violation, Defendants are free to raise qualified

12   immunity.

13           H.     42 U.S.C. §§ 1985 and 1986.

14   Plaintiffs bring two causes of action under 42 U.S.C. § 1985(2) which prohibits

15   conspiracies to obstruct justice, specifically by denying access to state or federal courts.  While

16   the Complaint brings two separate causes of action under this statute, one for conspiracy to

17   deprive persons of rights or privileges and one for conspiracy to obstruct justice, these do not

18   encompass two separate theories of liability and can be analyzed as one cause of action.  For the

19   following reasons, Plaintiff's argument fails.

20   First, the Complaints do not assert any facts indicating that Plaintiffs were denied access

21   to the courts.  Further, liability under this section, and specifically the second clause cited in the

22   Complaints, requires proof of "some racial, or perhaps otherwise class-based, invidiously

23   discriminatory animus behind the conspirators' action."  *See Griffin v. Brekenridge*, 403 U.S. 88,

24   102 (1971).  Plaintiffs fail to allege facts showing they were targeted as members of a class, let

25   alone a suspect class.  Elsewhere in the Complaints, Plaintiffs assert an equal protection claim

26   based on their residency in Rancho Tehama, but this class does not meet the standard necessary

27   for protection under § 1985.  *See Trerice v. Pedersen*, 769 F.2d 1398, 1402 (9th Cir. 1985)

28   (finding the class of military prisoners does not meet the standard under § 1985); *Nakao v.*

1   *Rushen*, 542 F.Supp. 856, 859 (N.D.Cal.1982) (class of "state prisoners" not protected under

2   section 1985(3) because there has been no congressional determination that it requires special

3   federal civil rights assistance, and because it does not possess "discrete, insular and immutable

4   characteristics comparable to those characterizing classes such as race, national origin and sex").

5   Neither do the Complaints assert facts which would indicate an "invidiously discriminatory

6   animus" on the part of any Defendant.  Plaintiffs' Complaints therefore fail to assert a cause of

7   action under § 1985(2) and Defendants' motion to dismiss as to these claims is GRANTED with

8   leave to amend.

9          Next, "[t]o state a cause of action under [§] 1985(3), a complaint must allege (1) a

10   conspiracy, (2) to deprive any person or a class of persons of the equal protection of the laws, or

11   of equal privileges and immunities under the laws, (3) an act by one of the conspirators in

12   furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any

13   right or privilege of a citizen of the United States."  *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th

14   Cir. 1980).  "A § 1985 claim 'must allege facts to support the allegation that defendants conspired

15   together.  A mere allegation of conspiracy without factual specificity is insufficient.'"  *Buckelew*

16   *v. Gore*, No. 20-CV-00158-WQH-JLB, 2020 WL 4188166, at *13 (S.D. Cal. July 21, 2020)

17   (quoting *Hamilton v. Hurtado*, No. 12cv1940 JAH (RBB), 2013 WL 3964755, at *7–8 (S.D. Cal.

18   July 31, 2013)).  Plaintiffs only make the bare assertion that Defendants conspired with each

19   other.  There are no additional facts which support this conclusion.  Further, the same requirement

20   that the deprivation of a right must be motivated by "some racial, or perhaps otherwise class-

21   based, invidiously discriminatory animus behind the conspirators' action" applies.  *RK Ventures,*

22   *Inc. v. City of Seattle*, 307 F.3d 1045, 1056 (9th Cir. 2002) (internal quotations and citations

23   omitted).  As discussed above, the allegation that Plaintiffs were denied equal protection based on

24   the location where they lived is insufficient to meet this standard.

25          Plaintiffs' additionally assert a single cause of action under 42 U.S.C. § 1986, which also

26   necessarily fails.  42 U.S.C. § 1986 provides in relevant part:

27             Every person who, having knowledge that any of the wrongs
             conspired to be done, and mentioned in section 1985 of this title, are
28             about to be committed, and having power to prevent or aid in

preventing the commission of the same, neglects or refuses so to do,
if such wrongful act be committed, shall be liable to the party injured,
or his legal representatives, for all damages caused by such wrongful
act, which such person by reasonable diligence could have prevented

42 U.S.C.A. § 1986.  The Ninth Circuit has asserted that "a cause of action is not provided under

42 U.S.C. § 1986 absent a valid claim for relief under section 1985." *Trerice v. Pedersen*, 769

F.2d 1398, 1403 (9th Cir. 1985).  A valid claim for relief under § 1985 is therefore a condition

precedent for any action under § 1986.  Because Plaintiffs' § 1985 claim fails, so must their cause

of action under § 1986.  Therefore, Defendants' motion to dismiss this claim is GRANTED.

Because the defects described above could be cured by amendment, such dismissal is with leave

to amend.  *Lopez*, 203 F.3d at 1130.

I.     <u>Violation of California Government Code § 815.6</u>

"Where a public entity is under a mandatory duty imposed by an enactment that is

designed to protect against the risk of a particular kind of injury, the public entity is liable for an

injury of that kind proximately caused by its failure to discharge the duty unless the public entity

establishes that it exercised reasonable diligence to discharge the duty."  Cal. Gov't Code § 815.6.

Plaintiffs allege Defendants are liable under this section because they failed to arrest Neal for

reported violations of the restraining order.

California courts have set out a three-prong test to determine if tort liability may attach

under § 815.6 for the failure of a public entity to discharge its duty: (1) the enactment in question

must impose a mandatory, not discretionary, duty; (2) the enactment must be intended to protect

against the kind of risk of injury suffered by the party asserting the statute as the basis of liability;

and (3) the breach must be the proximate cause of the plaintiff's injury.  *California v. Superior

Court*, 150 Cal. App. 3d 848, 853-54 (1984) (citations omitted); Cal. Gov't Code § 815.6.

Plaintiffs cite California Penal Code § 836(c)(1) as the mandatory enactment in question.

California Penal Code § 836(c)(1) provides: "When a peace officer is responding to a call

alleging a violation of a domestic violence protective or restraining order … and the peace officer

has probable cause to believe that the person against whom the order is issued has notice of the

order and has committed an act in violation of the order, the officer shall … make a lawful arrest

21

of the person without a warrant and take that person into custody whether or not the violation occurred in the presence of the arresting officer." Cal. Penal Code § 836(c)(1).  Defendants seek to dismiss this cause of action because the statute requires officers to have probable cause before making an arrest.  Defendants argue officers have discretion in determining probable cause and therefore this section cannot be considered mandatory for the purposes of § 815.6 liability.[13] Plaintiffs oppose, arguing that the use of "shall" in this statute creates a mandatory duty to arrest should probable cause exist.

Probable cause is an objective standard.  *U.S. v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007).  "Probable cause is established by what the officers observed and what a reasonable officer would have done in that situation, not by what [an officer's] own subjective impressions were." *Meas v. City & Cty. of San Francisco*, 681 F. Supp. 2d 1128, 1136 (N.D. Cal. 2010) (citing *Baker v. McCollan*, 443 U.S. 137, 145–46 (1979); *United States v. Mayo*, 394 F.3d 1271, 1276 (9th Cir. 2005)).  As an objective standard, the determination of whether probable cause existed is one of fact and not in the sole discretion of the officers.  Therefore, the Court finds § 836(c)(1) creates a mandatory duty — albeit one conditioned on an objective finding of probable cause — for which Defendants may be liable under § 815.6.  Whether Defendants violated this duty is a question for the factfinder.  Further, Plaintiffs have pleaded sufficient facts to allege probable cause that Neal had firearms in violation of the restraining order including: the neighbors' various reports of Neal shooting; visible ammunition on Neal's property; and Neal's alleged statement to an officer that he had been shooting but in a safe manner.  Therefore, Defendants' Motion to Dismiss this cause of action is DENIED.

J.    Violation of California Civil Code § 52.1

Plaintiffs bring a cause of action for violation of the Tom Bane Civil Rights Act, California Civil Code § 52.1.  Defendants seek to dismiss this cause of action, arguing Plaintiffs have failed to allege the necessary underlying constitutional violation.  "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., threats, intimidation or

---

[13]    Defendants do not argue the second two prongs of the test to determine if tort liability may attach under § 815.6.  As such, the Court does not discuss them here.

coercion), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Simmons v. Superior Court*, 7 Cal. App. 5th 1113, 1125 (2016) (internal citations and quotations omitted).  Key to a claim under the Bane act is an allegation that the defendant used threats, intimidation, or coercion.  *Shoyoye v. Cty. of Los Angeles*, 203 Cal. App. 4th 947, 959 (2012) ("It is the element of threat, intimidation, or coercion that is being emphasized in Civil Code § 52.1").  The only allegations of threats, intimidation, or coercion by Defendants was that Defendants "threaten[ed] to arrest the persons requesting assistance" with enforcing the restraining orders against Neal.  (ECF No. 1 at 16.)  This statement is insufficient to tie any alleged threats to a violation of Plaintiffs' constitutional or statutory rights under the pleading standards.  Plaintiffs have not asserted a statutory right to report the violation of the protective orders, nor have they stated sufficient facts to allege that it was this threat, specifically, which lead to the violation of their constitutional rights.  Further, Plaintiffs' only argument in opposition to the Motion to Dismiss is that they properly alleged constitutional violations.  Without facts indicating what specific threats, intimidation, or coercion lead to those violations, this cause of action must be dismissed.

Moreover, as discussed above, there is no constitutional right to police protection. *DeShaney*, 489 U.S. at 195.  Plaintiffs have failed to allege sufficient facts to establish the violation of an underlying constitutional or statutory right based on the allegations that Defendants in some way threatened Plaintiffs.  Therefore, Defendants' Motion to Dismiss this cause of action is GRANTED.  Because the defects described above could be cured by amendment, such dismissal is with leave to amend.  *Lopez*, 203 F.3d at 1130.

K.   Negligent Supervision, Training, Retention, and Ratification

Defendants make a very brief and confusing argument that because Defendants cannot be held liable under § 1983 on a *respondeat superior* theory and because Plaintiffs have failed to plead deliberate indifference, their state-law claim of negligent supervision, training, retention, and ratification must also fail.  Defendant's instant argument fails to discuss any of the elements of a negligent supervision or negligent training claim and is therefore unavailing.

1   As the Court is unable to decipher Defendants' arguments to find a basis on which to rule

2   on this motion to dismiss, the motion is DENIED as to this cause of action.

3              L.        Negligence in Violation of California Government Code § 815.2

4   California Government Code § 815.2(a) provides "[a] public entity is liable for injury

5   proximately caused by an act or omission of an employee of the public entity within the scope of

6   his employment if the act or omission would, apart from this section, have given rise to a cause of

7   action against that employee or his personal representative."  Cal. Gov't Code § 815.2.  As

8   Defendants point out, § 815.2 does not, in of itself, create a standalone cause of action.  Instead, it

9   is the basis by which a plaintiff can bring a suit for negligence on the part of an employee against

10  the public entity employer.  Therefore, the Court construes this cause of action as the basis by

11  which Plaintiffs may bring a negligence cause of action — specifically the negligent supervision,

12  training, retention, and ratification claim — against the County and Department.  Therefore,

13  Defendants' motion to dismiss this cause of action is GRANTED.  Because the defects described

14  above could be cured by amendment, such dismissal is with leave to amend.  *Lopez*, 203 F.3d at

15  1130.

16             M.       Waste of Public Funds in Violation of California Code of Civil Procedure §

17                        526a

18  "[I]n order to obtain injunctive relief in an action brought under Code of Civil Procedure

19  section 526a, the taxpayer must establish that the expenditure of public funds which he seeks to

20  enjoin is illegal."  *Herzberg v. Cty. of Plumas*, 133 Cal. App. 4th 1, 23–24 (2005).  "The term

21  'waste' under section 526a 'means something more than an alleged mistake of public officials in

22  matters involving the exercise of judgment or wide discretion.'"  *Daily Journal Corp. v. Cty. of*

23  *Los Angeles*, 172 Cal. App. 4th 1550, 1558 (2009).

24  Plaintiffs bring this cause of action in an effort to "obtain a judgment to declare plaintiffs'

25  right to equal protection under the law, and require defendants, and each of them, to comply with

26  their obligations under the law to investigate citizens' complaints where there are credible threats

27  of violence and/or evidence of violations of restraining orders without threatening the reporting

28  party, and stop its practice of discriminating against unincorporated communities."  (ECF No. 1 at

24

1   ¶ 130.)  This is not a remedy available under California Code Civ. P. § 526a.  "The purpose of

2   section 526a 'is to permit a large body of persons to challenge wasteful government action that

3   otherwise would go unchallenged because of the standing requirement.' [Citation.]  'The essence

4   of a taxpayer action is an illegal or wasteful expenditure of public funds or damage to public

5   property.'"  *McGee v. Torrance Unified Sch. Dist.*, 263 Cal. Rptr. 3d 331, 340 (2020) (quoting

6   *McLeod v. Vista Unified Sch. Dist.*, 158 Cal. App. 4th 1156, 1165 (2008)).  The request for such a

7   broad and sweeping declaratory judgment goes well beyond the remedies this Court can provide

8   under a waste cause of action.  Therefore, this claim fails to state a cause of action for which a

9   remedy may be obtained.  Thus, Defendants' motion to dismiss this cause of action is

10  GRANTED.  Because the defects described above could be cured by amendment, such dismissal

11  is with leave to amend.  *Lopez*, 203 F.3d at 1130.

12                          N.       Phommathep Plaintiffs' Retaliation Claim

13          The Phommathep Plaintiffs additionally assert a claim of retaliation but fail to allege

14  compliance with the California Tort Claims Act ("CTCA").  "The California Tort Claims Act

15  requires, as a condition precedent to suit against a public entity, the timely presentation of a

16  written claim and the rejection of the claim in whole or in part."  *Mangold v. California Pub.*

17  *Utilities Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995).  "The CTCA applies to state law claims

18  wherever those claims are brought, and the requirement that a plaintiff must affirmatively allege

19  compliance with the CTCA applies in federal court."  *Butler v. Los Angeles Cty.*, 617 F. Supp. 2d

20  994, 1001 (C.D. Cal. 2008).  The CTCA applies to actions for damages against local public

21  entities or public employees acting within the scope of that employee's public employment.  Cal.

22  Gov. Code § 950.2.  "[A] plaintiff must allege facts demonstrating or excusing compliance with

23  the claim presentation requirement.  Otherwise, his complaint is subject to a general demurrer for

24  failure to state facts sufficient to constitute a cause of action."  *State of California v. Superior*

25  *Court*, 32 Cal. 4th 1234, 1243 (2004).

26  ///

27  ///

28  ///

1   The Phommathep Plaintiffs' assert that after filing their claim for damages, the County

2   retaliated against them by accusing them of illegally growing marijuana.  While the Phommathep

3   Complaint states "Plaintiffs have filed the appropriate administrative claim with defendant

4   COUNTY OF TEHAMA, and plaintiff's claim was rejected by that entity on June 5, 2018," this

5   statement is a mere legal conclusion.  (Case No. 2:18-cv-02916-TLN-DMC, ECF No. 1 at ¶ 4.)

6   The Phommathep Plaintiffs have not provided the claim as an attachment to the Complaint, nor

7   have they alleged what specific facts and causes of action were referenced in the claim.  Without

8   such information, the Phommathep Plaintiffs have not sufficiently pleaded facts demonstrating

9   they complied with the CTCA in bringing this state tort claim.  Therefore, Defendants' Motion to

10   Dismiss this cause of action is GRANTED.  Because the defects described above could be cured

11   by amendment, such dismissal is with leave to amend.  *Lopez*, 203 F.3d at 1130.

12        O.        Steele and McFadyen Plaintiffs' Intentional Infliction of Emotional

13                  Distress Claim

14        The Steele and McFadyen Plaintiffs also bring an Intentional Infliction of Emotional

15   Distress ("IIED") claim.  Like the retaliation claim in the Phommathep Complaint, a plaintiff

16   must first comply with the CTCA before bringing a suit for damages based in state law.

17   *Mangold*, 67 F.3d at 1477.  The Steele and McFadyen Plaintiffs have failed to allege facts

18   demonstrating compliance with the CTCA.  The statement that Plaintiffs "filed the appropriate

19   administrative claim" is a mere conclusion.  (ECF No. 1 at ¶ 4).  As such, this cause of action

20   must be dismissed.[14]  Therefore, Defendants' Motion to Dismiss this cause of action is

21   GRANTED.  Because the defects described above could be cured by amendment, such dismissal

22   is with leave to amend.  *Lopez*, 203 F.3d at 1130.

23   ///

24   ///

25

26   [14]      Defendants make a brief assertion that Johnston and Hencratt's statements are protected
     under the Anti-SLAPP statute.  However, in order to assert protection under the Anti-SLAPP
27   statute, Defendants must file a separate special motion to strike.  CCP § 425.16(b).  No such
     motion has been filed and therefore this Court will not analyze this cause of action under the
28   Anti-SLAPP statutes.

P.     Public and Private Nuisance Claim

Finally, Plaintiffs bring a cause of action for public and private nuisance against all Defendants.  However, once again Plaintiffs have failed to affirmatively allege facts demonstrating they complied with the CTCA in their action against the County Defendants and county employees — Hencratt and Johnston.  Failure to make this affirmative factual allegation in the complaint is grounds for dismissal.  *Butler*, 617 F. Supp. 2d at 1001.  Therefore, Defendants' Motion to Dismiss this cause of action is GRANTED.  Because the defects described above could be cured by amendment, such dismissal is with leave to amend.  *Lopez*, 203 F.3d at 1130.

**IV.   CONCLUSION**

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendants' Motion to Dismiss as follows:

Case No. 2:18-cv-02927-TLN-DMC, the Steele Complaint

1.   The Motion to Dismiss the First Cause of Action is GRANTED with leave to amend;

2.   The Motion to Dismiss the Second Cause of Action is DENIED;

3.   The Motion to Dismiss the Third Cause of Action is GRANTED with leave to amend;

4.   The Motion to Dismiss the Fourth Cause of Action is GRANTED with leave to amend;

5.   The Motion to Dismiss the Fifth Cause of Action is GRANTED with leave to amend;

6.   The Motion to Dismiss the Sixth Cause of Action is GRANTED with leave to amend;

7.   The Motion to Dismiss the Seventh Cause of Action is DENIED;

8.   The Motion to Dismiss the Eighth Cause of Action is GRANTED with leave to amend;

9.   The Motion to Dismiss the Ninth Cause of Action is DENIED;

///

10. The Motion to Dismiss the Tenth Cause of Action is GRANTED with leave to amend;

11. The Motion to Dismiss the Eleventh Cause of Action is GRANTED with leave to amend;

12. The Motion to Dismiss the Nineteenth Cause of Action is GRANTED with leave to amend.

Case No. 2:18-cv-02916-TLN-DMC, the Phommathep Complaint,

1. The Motion to Dismiss the First Cause of Action is GRANTED with leave to amend;

2. The Motion to Dismiss the Second Cause of Action is DENIED;

3. The Motion to Dismiss the Third Cause of Action is GRANTED with leave to amend;

4. The Motion to Dismiss the Fourth Cause of Action is GRANTED with leave to amend;

5. The Motion to Dismiss the Fifth Cause of Action is GRANTED with leave to amend;

6. The Motion to Dismiss the Sixth Cause of Action is GRANTED with leave to amend;

7. The Motion to Dismiss the Seventh Cause of Action is DENIED;

8. The Motion to Dismiss the Eighth Cause of Action is GRANTED with leave to amend;

9. The Motion to Dismiss the Ninth Cause of Action is DENIED;

10. The Motion to Dismiss the Tenth Cause of Action is GRANTED with leave to amend;

11. The Motion to Dismiss the Eleventh Cause of Action is GRANTED with leave to amend;

12. The Motion to Dismiss the Twelfth Cause of Action is GRANTED with leave to amend;

13. The Motion to Dismiss the Nineteenth Cause of Action is GRANTED with leave to amend;

14. The Motion to Dismiss the Twenty-First Cause of Action is GRANTED with leave to amend.

Case No. 2:18-cv-02918-TLN-DMC, the Woods Complaint

1. The Motion to Dismiss the First Cause of Action is GRANTED with leave to amend;

2. The Motion to Dismiss the Second Cause of Action is DENIED;

3. The Motion to Dismiss the Third Cause of Action is GRANTED with leave to amend;

4. The Motion to Dismiss the Fourth Cause of Action is GRANTED with leave to amend;

5. The Motion to Dismiss the Fifth Cause of Action is GRANTED with leave to amend;

6. The Motion to Dismiss the Sixth Cause of Action is GRANTED with leave to amend;

7. The Motion to Dismiss the Seventh Cause of Action is DENIED;

8. The Motion to Dismiss the Eighth Cause of Action is GRANTED with leave to amend;

9. The Motion to Dismiss the Ninth Cause of Action is DENIED;

10. The Motion to Dismiss the Tenth Cause of Action is GRANTED with leave to amend;

11. The Motion to Dismiss the Eleventh Cause of Action is GRANTED with leave to amend;

12. The Motion to Dismiss the Nineteenth Cause of Action is GRANTED with leave to amend.

///

///

Case No. 2:18-cv-02912-TLN-DMC, the McFadyen Complaint,

    1.  The Motion to Dismiss the First Cause of Action is GRANTED with leave to amend;

    2.  The Motion to Dismiss the Second Cause of Action is DENIED;

    3.  The Motion to Dismiss the Third Cause of Action is GRANTED with leave to amend;

    4.  The Motion to Dismiss the Fourth Cause of Action is GRANTED with leave to amend;

    5.  The Motion to Dismiss the Fifth Cause of Action is GRANTED with leave to amend;

    6.  The Motion to Dismiss the Sixth Cause of Action is GRANTED with leave to amend;

    7.  The Motion to Dismiss the Seventh Cause of Action is GRANTED without leave to amend;

    8.  The Motion to Dismiss the Eighth Cause of Action is GRANTED with leave to amend;

    9.  The Motion to Dismiss the Ninth Cause of Action is DENIED;

    10. The Motion to Dismiss the Tenth Cause of Action is GRANTED with leave to amend;

    11. The Motion to Dismiss the Eleventh Cause of Action is DENIED;

    12. The Motion to Dismiss the Twelfth Cause of Action is GRANTED with leave to amend;

    13. The Motion to Dismiss the Thirteenth Cause of Action is GRANTED with leave to amend.

Case No. 2:18-cv-02917-TLN-DMC, the A.H. Complaint

    1.  The Motion to Dismiss the First Cause of Action is GRANTED with leave to amend;

*///*

2.   The Motion to Dismiss the Second Cause of Action is DENIED;

3.   The Motion to Dismiss the Third Cause of Action is GRANTED with leave to amend;

4.   The Motion to Dismiss the Fourth Cause of Action is GRANTED with leave to amend;

5.   The Motion to Dismiss the Fifth Cause of Action is GRANTED with leave to amend;

6.   The Motion to Dismiss the Sixth Cause of Action is GRANTED with leave to amend;

7.   The Motion to Dismiss the Seventh Cause of Action is DENIED;

8.   The Motion to Dismiss the Eighth Cause of Action is GRANTED with leave to amend;

9.   The Motion to Dismiss the Ninth Cause of Action is DENIED;

10. The Motion to Dismiss the Tenth Cause of Action is GRANTED with leave to amend;

11. The Motion to Dismiss the Eleventh Cause of Action is GRANTED with leave to amend;

12. The Motion to Dismiss the Eighteenth Cause of Action is GRANTED with leave to amend.

Plaintiffs may file an amended complaint not later than 30 days from the electronic filing of this Order.  Defendants' responsive pleading is due 21 days after Plaintiffs file the amended complaint.

IT IS SO ORDERED.

DATED:  August 3, 2020

Troy L. Nunley
United States District Judge

31