1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10
11

MICHAEL ELLIOTT, et al.,

No. 2:18-cv-02927-TLN-DMC

12

Plaintiffs,

13

v.

**ORDER**

14

COUNTY OF TEHAMA, et al.,

15

Defendants.

16
17          This matter is before the Court on Defendants County of Tehama ("County"), Tehama

18   County Sheriff's Office ("Sheriff's Office"), Sheriff Dave Hencratt ("Hencratt"), and Assistant

19   Sheriff Phil Johnston ("Johnston") (collectively, "County Defendants") Motion to Dismiss.  (ECF

20   No. 56.)  Plaintiffs Michael Elliott, G.E., and M.E. (collectively, "Plaintiffs") filed an opposition.

21   (ECF No. 59.)  County Defendants filed a reply.  (ECF No. 62.)

22          Also before the Court is Defendant Rancho Tehama Association, Inc.'s ("RTA") Motion

23   to Dismiss.  (ECF No. 57.)  Plaintiffs filed an opposition.  (ECF No. 58.)  RTA filed a reply.

24   (ECF No. 63.)

25          For the reasons set forth below, the Court GRANTS County Defendants' motion (ECF

26   No. 56) and DENIES RTA's motion (ECF No. 57) as moot.

27   ///

28   ///

1

1        **I.      FACTUAL AND PROCEDURAL BACKGROUND**

2             The Court need not recount all background facts, as they are set forth fully in the Court's

3  August 4, 2020 Order.  (*See* ECF No. 44.)  In short, this action arises from a mass shooting that

4  occurred on November 14, 2017.  (*Id.*)  The shooter, Kevin Neal ("Neal") killed at least five

5  people and wounded at least a dozen more.  (*Id.*)  Two of the deceased victims were Neal's

6  neighbors, Daniel Elliott II ("Elliott") and Diana Steele ("Steele").  (ECF No. 54 at 15.)  Plaintiffs

7  are the heirs at law and successors-in-interest of Elliott and Steele.  (*Id.* at 9.)

8             Plaintiffs filed the instant action on November 7, 2018.  (ECF No. 1.)  The Court granted

9  County Defendants' motion to dismiss the Complaint on August 4, 2020 (ECF No. 44) and

10  denied RTA's motion to dismiss as moot on September 3, 2020 (ECF No. 46).  Plaintiffs filed the

11  operative Second Amended Complaint ("SAC") on October 8, 2020.  (ECF No. 54.)  Plaintiffs

12  assert the following claims: (1) a 42 U.S.C. § 1983 ("§ 1983") claim for violation of due process

13  under the Fourteenth Amendment against County Defendants; (2) a § 1983 claim for violation of

14  equal protection under the Fourteenth Amendment against County Defendants; (3) a § 1983

15  *Monell* claim for failure to train/supervise against County Defendants; (4) failure to perform

16  mandatory duties in violation of California Government Code § 815.6 against County

17  Defendants; (5) negligent supervision, training, retention, and ratification against County

18  Defendants; (6) negligence per se against County Defendants; (7) negligence/negligent premises

19  liability against RTA; (8) public and private nuisance against all Defendants; and (9) intentional

20  infliction of emotional distress against Hencratt and Johnston.  (*See generally id.*)

21             RTA and County Defendants filed separate motions to dismiss the SAC on January 4,

22  2021.  (ECF Nos. 56, 57).  Both motions are brought pursuant to Federal Rule of Civil Procedure

23  ("Rule") 12(b)(6).

24        **II.      STANDARD OF LAW**

25             A motion to dismiss for failure to state a claim upon which relief can be granted under

26  Rule 12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th

27  Cir. 2001).  Rule 8(a) requires that a pleading contain "a short and plain statement of the claim

28  showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556

1   U.S. 662, 677–78 (2009).  Under notice pleading in federal court, the complaint must "give the

2   defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic*

3   *v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).  "This simplified

4   notice pleading standard relies on liberal discovery rules and summary judgment motions to

5   define disputed facts and issues and to dispose of unmeritorious claims."  *Swierkiewicz v. Sorema*

6   *N.A.*, 534 U.S. 506, 512 (2002).

7         On a motion to dismiss, the factual allegations of the complaint must be accepted as true.

8   *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court must give the plaintiff the benefit of every

9   reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail*

10  *Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege

11  "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to

12  relief."  *Twombly*, 550 U.S. at 570 (internal citation omitted).

13        Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

14  factual allegations."  *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

15  While Rule 8(a) does not require detailed factual allegations, "it demands more than an

16  unadorned, the defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A

17  pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

18  elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

19  ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

20  statements, do not suffice.").  Thus, '[c]onclusory allegations of law and unwarranted inferences

21  are insufficient to defeat a motion to dismiss for failure to state a claim."  *Adams v. Johnson*, 355,

22  F.3d 1179, 1183 (9th Cir. 2004) (citations omitted).  Moreover, it is inappropriate to assume the

23  plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws

24  in ways that have not been alleged."  *Associated Gen. Contractors of Cal., Inc. v. Cal. State*

25  *Council of Carpenters*, 459 U.S. 519, 526 (1983).

26        Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

27  facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim

28  has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

1   reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

2   680.  While the plausibility requirement is not akin to a probability requirement, it demands more

3   than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  This plausibility

4   inquiry is "a context-specific task that requires the reviewing court to draw on its judicial

5   experience and common sense." *Id.* at 679.  Thus, only where a plaintiff fails to "nudge [his or

6   her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly

7   dismissed.  *Id.* at 680 (internal quotations omitted).

8          In ruling on a motion to dismiss, a court may consider only the complaint, any exhibits

9   thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201.

10  *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v.*

11  *Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998); *see also Daniels-*

12  *Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (the court need not accept as true

13  allegations that contradict matters properly subject to judicial notice).

14         If a complaint fails to state a plausible claim, "'[a] district court should grant leave to

15  amend even if no request to amend the pleading was made, unless it determines that the pleading

16  could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122,

17  1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995));

18  *see also Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in

19  denying leave to amend when amendment would be futile).  Although a district court should

20  freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to

21  deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint."

22  *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting

23  *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

24         **III.   ANALYSIS**

25         County Defendants and RTA move to dismiss all Plaintiffs' claims against them.  Because

26  this Court's subject matter jurisdiction depends on Plaintiffs' federal claims against County

27  Defendants (*see* ECF No. 54 at 7), the Court first addresses Plaintiffs' § 1983 claims for due

28  process, equal protection, and *Monell* violations.  As will be discussed, because Plaintiffs fail to

4

1    state a viable federal claim — and it is unclear whether they can do so in an amended complaint

2    — the Court declines to address Plaintiffs' state law claims in the interest of judicial economy.

3                          A.    <u>Federal Claims</u>

4                                i.    *Claim One: Due Process*

5           Plaintiffs bring their due process claim against County Defendants and Does 1–10 under

6    the state created danger theory.[1]  (ECF No. 54 at 36.)  In order to prevail under a state created

7    danger theory, a plaintiff must show (1) there was "affirmative conduct on the part of the state in

8    placing the plaintiff in danger" and (2) the state acted with "deliberate indifference" to a "known

9    or obvious danger."  *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011) (citing *Munger v.*

10   *City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir. 2000); *L.W. v. Grubbs*, 92 F.3d 894,

11   900 (9th Cir. 1996)).  The Court further notes that should Plaintiffs be able to establish a

12   constitutional violation under this theory, the County and Department can only be held liable if

13   there is a municipal policy or practice which was the driving force behind the deprivation, or, on

14   the part of Hencratt and Johnston, if they had a personal involvement in the deprivation or if their

15   wrongful acts were sufficiently causally related to the deprivation.  *Monell v. Dep't of Social*

16   *Serv.*, 436 U.S. 658, 691 (1978); *Hansen v. Black*, 885 F.2d 642, 645–46 (9th Cir. 1989).

17          In its previous order, the Court concluded Plaintiffs' allegations that officers (1) ignored

18   credible complaints about Neal and (2) threatened Neal's victims for reporting crimes were not

19   "affirmative act[s] that placed the victims in a more dangerous position."  (ECF No. 44 at 9–10.)

20   Because Plaintiffs failed to allege officers took any affirmative action, the Court declined to

21   address deliberate indifference.  (*Id.* at 11.)

22          In the instant motion, County Defendants again argue Plaintiffs fail to allege affirmative

23   action.  (ECF No. 56-1 at 11–14.)  In opposition, Plaintiffs highlight the following new

24   allegations in the SAC: (1) when responding to a complaint about Neal's shooting in 2016,

25   officers told Neal he could discharge firearms as long as he did so "in a safe manner" when they

26

---

27   [1]    Plaintiffs previously asserted a due process claim under a "special relationship" theory.
     However, it appears Plaintiffs have abandoned this theory in their SAC and make no argument
28   about this alternative theory in their opposition.

1   knew he had not been doing so and that the discharge of firearms was prohibited in the

2   community; (2) after a criminal protective order against Neal became effective in early 2017,

3   officers improperly left it up to Neal to voluntarily turn in his firearms and did not follow up

4   when Neal's wife called and reported her firearm as stolen, which communicated to Neal that

5   County Defendants did not care if he continued to own and discharge firearms; (3) County

6   Defendants communicated to Neal they did not enforce protective order violations or take illegal

7   possession of firearms seriously when they refused to respond to Neal's complaints in July 2017

8   about other individuals brandishing firearms and violating restraining orders; and (4) Neal knew

9   that County Defendants failed to adequately respond to complaints about Neal possessing and

10  shooting firearms on his property toward his neighbor's homes.  (ECF No. 59 at 17–21.)

11  Plaintiffs argue these allegations constitute affirmative action by County Defendants in that they

12  "communicated explicitly (by direct contact) and implicitly (via a general and conspicuous

13  pattern and practice of not taking complaints of Neal's violent and illegal behavior seriously) that

14  Neal could continue to act with impunity, discharge firearms, and terrorize the community

15  without facing law enforcement repercussions."  (*Id.* at 16.)  To support this proposition,

16  Plaintiffs rely primarily on three Second Circuit cases: *Pena v. DePrisco*, 432 F.3d 98 (2d Cir.

17  2005), *Dwares v. City of N.Y.*, 985 F.2d 94 (2d Cir. 1993), and *Okin v. Vill. of Cornwall-on-*

18  *Hudson Police Dep't*, 577 F.3d 415 (2d Cir. 2009).  (*Id.* at 13–15.)  Even if this Court were to

19  apply the foregoing Second Circuit authority, however, these cases are easily distinguishable.

20        In *Dwares*, police officers allegedly told skinheads in advance of a political rally that they

21  would not interfere with assaults or arrest those responsible for them.  985 F.2d at 99.  The

22  *Dwares* court stated "[s]uch a prearranged official sanction of privately inflicted injury would

23  surely have violated the victim's rights under the Due Process Clause."  *Id.*  In contrast, Plaintiffs

24  do not allege any officers *explicitly* told Neal it was acceptable to harm others or that he would

25  not be arrested if he did so.  Plaintiffs argue officers "directly communicated" their approval by:

26  (1) telling Neal in 2016 there "was nothing they could do" so as long as he was shooting his

27  firearms "in a safe manner" despite knowing Neal was not shooting in a safe manner and had

28  recently assaulted someone; (2) allowing Neal to voluntarily turn in firearms after the criminal

6

1    protective order was issued and failing to follow up with a subsequent report from Neal's wife

2    that her firearm was missing; (3) refusing to respond to Neal's reports of another individual

3    brandishing a weapon; and (4) ignoring numerous reports regarding Neal's dangerous activities.

4    (ECF No. 59 at 17–18.)  None of these communications with Neal come close to the "prearranged

5    official sanction" of violence that occurred in *Dwares*.  As to Plaintiffs' allegations about the

6    officers' inaction, even the *Dwares* court recognized "an allegation simply that police officers had

7    failed to act upon reports of past violence would not implicate the victim's rights under the Due

8    Process Clause."  985 F.2d at 99.

9        In *Pena*, an off-duty officer killed a number of people while driving intoxicated.  432 F.3d

10    at 102.  The plaintiff alleged supervisory personnel encouraged the off-duty officer to drink in

11    excess and drive under the influence by routinely drinking with him in the precinct parking lot,

12    drinking and riding with him on the date of the incident, and otherwise communicating their

13    approval by condoning the misconduct.  *Id.* at 110–11.  The court found such allegations

14    amounted to a state created danger claim because state officials implicitly communicated to the

15    off-duty officer that he would not be "arrested, punished, or otherwise interfered with while

16    engaging in misconduct that [was] likely to endanger the life, liberty, or property of others."  *Id.*

17    at 111–12.  Importantly, "the Ninth Circuit has not adopted the *Pena* [c]ourt's holding that the

18    affirmative conduct element of the state-created danger doctrine may occur 'implicitly.'"

19    *Jamison v. Storm*, 426 F. Supp. 2d 1144, 1156 (W.D. Wash. 2006).  Even if this Court found

20    *Pena* to be persuasive, the facts are much different here.  In *Pena*, officers and supervisors

21    routinely drank at work with the off-duty officer and knew he was driving while drunk.  432 F.3d

22    at 110–11.  Here, there are no allegations that County Defendants or any other officers

23    participated in or encouraged Neal's violence.  There are no allegations to suggest that officers

24    implicitly communicated to Neal that he would "not be arrested, punished, or otherwise interfered

25    with" if he harmed others.  *Id.* at 111.  To the contrary, Plaintiffs allege Neal was arrested for

26    threatening individuals and firing a gun over their heads in January 2017, which resulted in the

27    issuance of the criminal protective order and a civil restraining order.  (ECF No. 54 at 22.)  At

28    most, Plaintiffs assert "a failure to prevent misbehavior and to reprimand or punish" Neal for

1    complaints about owning and shooting firearms on his property after January 2017, which is

2    insufficient to state a due process claim.  432 F.3d at 112.

3            In *Okin*, the court found there was "a genuine issue of material fact as to whether

4    [officers] implicitly but affirmatively encouraged [the assailant's] domestic violence."  577 F.3d

5    at 430.  The court cited an occasion when officers discussed football with the assailant during

6    their response to the victim's complaint that he had beaten and tried to choke her.  *Id.*  The court

7    also emphasized there were numerous occasions when the officers responded to the victim's

8    complaints without filing a domestic incident report, interviewing the assailant, or making an

9    arrest, even after the assailant told the officers he could not "help it sometime when he smack[ed]

10   . . . [the victim] around."  *Id.*  The court stated the evidence showed "an escalating series of

11   incidents" where the officers "openly expressed camaraderie with [the assailant] and contempt for

12   [the victim]," which could be viewed as ratcheting up the threat of danger to the victim.  *Id.*

13   Unlike *Okin*, there are no allegations here that officers ever expressed camaraderie with Neal or

14   contempt for potential victims.

15           The only Ninth Circuit case Plaintiffs cite on this issue is *Kennedy v. City of Ridgefield*,

16   439 F.3d 1055 (9th Cir. 2006).  (ECF No. 59 at 13.)  In *Kennedy*, Kimberly Kennedy contacted a

17   police department to report that a neighbor molested her young daughter.  *Id.* at 1057.  Kennedy

18   warned the officer that the neighbor had "violent tendencies."  *Id.*  The officer "assured Kennedy

19   she would be given notice prior to any police contact with the [neighbor's family] about her

20   allegations."  *Id.* at 1058.  Despite this promise, the officer drove to the neighbor's residence and

21   informed the neighbor's family of the allegations prior to warning Kennedy.  *Id.*  Later that

22   evening, the suspect broke into Kennedy's house and shot Kennedy and her husband, killing the

23   husband.  *Id.*  The Ninth Circuit found that, by notifying the neighbor's family of the allegations

24   "before the Kennedys had the opportunity to protect themselves from this violent response to the

25   news," the officer "affirmatively created an *actual, particularized* danger Kennedy would not

26   otherwise have faced."  *Id.* at 1063 (emphasis added).

27           Unlike *Kennedy,* Plaintiffs' allegations do not lend even a reasonable inference that

28   officers "affirmatively created an actual, particularized" danger to Plaintiffs.  Consistent with

*Kennedy*, other Ninth Circuit courts have permitted claims to proceed under the state created danger theory only where the state actor played a significant role in creating the dangerous situation.  *See Munger*, 227 F.3d at 1082 (holding police officers could be held liable for the death of a visibly drunk patron from hypothermia they had ejected from a bar on an extremely cold night); *Penilla v. City of Huntington Park*, 115 F.3d 707 (9th Cir. 1997) (holding as viable a state created danger claim against police officers who, after finding a man in grave need of medical care, cancelled a request for paramedics and locked him inside his house); *L.W. v. Grubbs*, 974 F.2d 119 (9th Cir. 1992) (holding state employees could be liable for the rape of a registered nurse assigned to work alone with a known, violent sex-offender); *Wood v. Ostrander*, 879 F.2d 583 (9th Cir. 1989) (holding state could be liable for the rape of a woman that an officer had left stranded in a known high-crime area late at night).  Here, the officers' alleged conduct falls far short of this standard.  Although the officers may have been able to prevent the injuries, that does not mean they created an "actual, particularized" danger that did not otherwise exist. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 203 (1989) ("The most that can be said of the state functionaries in this case is that they stood by and did nothing when suspicious circumstances dictated a more active role for them.").  As stated in this Court's previous order, Plaintiffs' allegations make clear that "Neal was, and would have remained, a dangerous individual prone to violent behavior" regardless of the officers' conduct.[2]  (ECF No. 44 at 10–11.)

   For all these reasons, Plaintiffs fail to allege affirmative action by County Defendants or any particular officer that created the danger posed by Neal.  As such, Plaintiffs fail to assert a

---

[2]    Plaintiffs also argue County Defendants "cut off other sources of assistance to Rancho Tehama, for example, instructing CalFire not to respond to pleas for assistance."  (ECF No. 59 at 16.)  Plaintiffs do not cite where in the SAC these allegations can be found.  The Court can locate only one reference to a situation in July 2017 when CalFire received a call from Neal alleging he could smell a "burning perfume" he thought was methamphetamine.  (ECF No. 54 at 45.) Plaintiffs allege County Defendants recommended CalFire not investigate this incident because Neal "had reality issues and was also a firearms owner."  (*Id.*)  Plaintiffs allege this shows County Defendants instructed CalFire not to respond, but they fail to explain how this allegation is relevant to or contributed to the danger that occurred on November 14, 2017.  (*Id.*)

1  viable due process claim under the state created danger theory.  In its prior order, the Court

2  informed Plaintiffs what was necessary to state a plausible due process claim.  Plaintiffs failed to

3  do so and instead relied on many of the same allegations and arguments the Court previously

4  rejected.  Plaintiffs fail to persuade the Court that they can allege additional facts that would cure

5  the deficiencies in this claim.  Therefore, the Court DISMISSES Plaintiffs' due process claim

6  without leave to amend.[3]

7                                    *ii.*      *Claim Two: Equal Protection*

8          Plaintiffs bring their equal protection claim against County Defendants and Does 1–10.

9  (ECF No. 54 at 56.)  As a preliminary matter, Plaintiffs argue the Court should deny County

10  Defendants' challenge to the equal protection claim because County Defendants did not challenge

11  this claim in their original motion to dismiss.  (ECF No. 59 at 23.)  "If a failure-to-state-a-claim

12  defense under Rule 12(b)(6) was not asserted in the first motion to dismiss under Rule 12, Rule

13  12(h)(2) tells us that it can be raised, but only in a pleading under Rule 7, in a post-answer motion

14  under Rule 12(c), or at trial."  *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir.

15  2017).  However, the Ninth Circuit has adopted a "very forgiving" approach and allows district

16  courts to consider new arguments in successive motions to dismiss in the interest of judicial

17  economy.  *Id.* at 318–19.  Because the issue has now been fully briefed, the Court will consider

18  the merits of County Defendants' arguments.

19          "The Equal Protection Clause of the Fourteenth Amendment commands that no state shall

20  'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a

21  direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne*

22  *Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).  In order to state an equal protection claim, a plaintiff

23

---

24  [3]     The Court also notes that to the extent Plaintiffs' claim is based on the actions of

25  individual "Doe" officers, those officers would likely be granted qualified immunity based on the lack of clearly established law on this issue.  *See, e.g.*, *Decoria v. Cnty. of Jefferson*, 333 F. App'x

26  171, 173 (9th Cir. 2009) ("[W]e have never decided the question of whether a defendant officer violates a plaintiff's constitutional rights when, as in this case, the officer's challenged actions

27  were not directed toward the plaintiff, but rather toward another person who later harmed the plaintiff.").

28

1    must allege: (1) the municipal defendants treated him differently from others similarly situated;

2    (2) this unequal treatment was based on an impermissible classification; (3) the municipal

3    defendants acted with discriminatory intent in applying this classification; and (4) the plaintiff

4    suffered injury as a result of the discriminatory classification.  *Moua v. City of Chico*, 324 F.

5    Supp. 2d 1132, 1137 (E.D. Cal. 2004).  The denial of police protection to disfavored persons

6    stemming from discriminatory intent or motive violates the Equal Protection Clause.  *Estate of*

7    *Macias v. Ihde*, 219 F.3d 1018 (9th Cir. 2000).  However, "in police failure-to-serve cases, the

8    courts consistently have required more evidence of discriminatory intent than a simple failure of

9    diligence, perception, or persistence in a single case. . . ."  *Moua*, 324 F. Supp. 2d at 1140.

10        County Defendants argue Plaintiffs fail to allege discriminatory intent or motive.  (ECF

11   No. 56-1 at 17.)  In opposition, Plaintiffs argue the following allegations in the SAC show

12   discriminatory intent: (1) Defendants were biased and prejudiced against Rancho Tehama based

13   on the perception that the community was impoverished, isolated, and a haven for "lowlifes, drug

14   use, and general lawlessness"; (2) based on these biases and prejudices, Defendants withheld

15   from the community ordinary and reasonable police response, protection, and enforcement

16   services compared to other communities within their jurisdiction, "particularly involving [Neal]";

17   (3) Defendants' discriminatory purpose was to allow the community to experience and suffer the

18   dangerous and lawless effects of the community's own fault and making; and (4) Defendants'

19   conduct had the discriminatory effect of exposing Plaintiffs to the danger posed by Neal.  (ECF

20   No. 59 at 25–26.)

21        Plaintiffs' somewhat attenuated claim seems to allege that officers violated their equal

22   protection rights by failing to respond to complaints about Neal because the parties resided in the

23   "impoverished," "lowlife," and "lawless" community of Rancho Tehama.  (*See* ECF No. 54 at

24   56–57.)  Plaintiffs fail to cite any case law where an individual raised a similar equal protection

25   claim.  Indeed, "the typical fact pattern in . . . cases [regarding alleged unequal protection of

26   police services] involves domestic violence and repeated calls for police intervention by a female

27   victim," which is not analogous to the instant case.  *Moua*, 324 F. Supp. 2d at 1139–40.

28   Moreover, Plaintiffs fail to cite any factual allegations suggesting that officers withheld police

1   services in response to complaints about Neal because of any bias or perception about Rancho

2   Tehama, or that officers would have acted differently under the circumstances if Neal resided in

3   another community.  The SAC includes numerous allegations suggesting police responded to

4   complaints about Neal in a particular way because of Neal's specific characteristics.  For

5   example, Plaintiffs allege officers indicated Neal was "not law enforcement friendly," "would not

6   come to the door," "had reality issues," and "was also a firearms owner."  (ECF No. 54 at 59–61.)

7   While the SAC also alleges the officers dismissed complaints about Neal because the callers were

8   deemed "not credible," there are no factual allegations to suggest officers based these credibility

9   determinations on broad perceptions about Rancho Tehama.  (*Id.* at 61.)  Put simply, there are no

10  factual allegations to lend even a reasonable inference that officers treated Rancho Tehama

11  residents, including Plaintiffs, worse than residents of other communities, much less that officers

12  did so based on any bias or perception about Rancho Tehama.  It seems that Plaintiffs' claim

13  relates to "a simple failure of diligence, perception, or persistence" in cases involving Neal

14  specifically, not Rancho Tehama generally.  *See Moua*, 324 F. Supp. 2d at 1140.  Plaintiffs fail to

15  explain how this is sufficient to state an equal protection claim.  Accordingly, the first element for

16  such a claim — different treatment from others similarly situated — is not met.

17          For these reasons, the Court DISMISSES Plaintiffs' equal protection claim.  Although the

18  Court is hard-pressed to imagine how Plaintiffs could cure the aforementioned deficiencies in this

19  claim, the Court will allow Plaintiffs an opportunity to amend based on the liberal standard in

20  favor of granting leave to amend.  *See Lopez*, 203 F.3d at 1130.

21                          *iii.      Claim Three: Monell Claim*

22          Plaintiffs assert a separate cause of action against County Defendants for failure to

23  train/supervise and ratification of procedures in violation of § 1983 based on the constitutional

24  violations alleged in the due process and equal protection claims.  (ECF No. 54 at 65.)  County

25  Defendants assert this cause of action should be dismissed because Plaintiffs fail to allege the

26  underlying constitutional violations or that any violation occurred as a result of a policy or custom

27  adopted or ratified by a municipal policymaker.  (ECF No. 56-1 at 19.)

28          Municipalities cannot be held vicariously liable for the unconstitutional acts of their

                                                    12

1  employees based solely on a *respondeat superior* theory.  *Monell*, 436 U.S. at 691.  Rather,

2  municipalities are only "responsible for their own illegal acts."  *Pembaur v. Cincinnati*, 475 U.S.

3  469, 479 (1986).  "In order to establish municipal liability, a plaintiff must show that a 'policy or

4  custom' led to the plaintiff's injury.  The Court has further required that the plaintiff demonstrate

5  that the policy or custom of a municipality 'reflects deliberate indifference to the constitutional

6  rights of its inhabitants.'"  *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1073 (9th Cir. 2016)

7  (quoting *Monell*, 436 U.S. 658; *City of Canton v. Harris*, 489 U.S. 378, 392 (1989)).

8       Similarly, "[u]nder [§] 1983, supervisory officials are not liable for actions of

9  subordinates on any theory of vicarious liability."  *Hansen*, 885 F.2d at 645–46.  However, "[a]

10  supervisor may be liable if there exists either (1) his or her personal involvement in the

11  constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful

12  conduct and the constitutional violation."  *Id.*

13       In its prior order, the Court dismissed Plaintiffs' *Monell* claim because they failed to plead

14  an underlying constitutional violation.  (ECF No. 44 at 18.)  Without an underlying constitutional

15  violation, Plaintiffs have no claim against anyone, including County Defendants.  Because

16  Plaintiffs again fail to allege an underlying due process or equal protection violation — which

17  form the basis of Plaintiffs' *Monell* claim — the Court dismisses this claim.  To the extent

18  Plaintiffs are capable of alleging a viable equal protection claim, the Court grants leave to amend.

19  *Lopez*, 203 F.3d at 1130.

20            B.     State Claims

21       County Defendants and RTA also move to dismiss Plaintiffs' five remaining state law

22  claims.  (*See* ECF Nos. 56, 57.)  When a federal court has dismissed all claims over which it has

23  original jurisdiction, it may, at its discretion, decline to exercise supplemental jurisdiction over

24  the remaining state law claims.  28 U.S.C. § 1367(c)(3); *Carlsbad Tech., Inc. v. HIF Bio, Inc.*,

25  556 U.S. 635, 639–40 (2009).  Because this Court's jurisdiction depends on Plaintiffs stating a

26  viable equal protection claim — and the Court has indicated its doubt as to whether Plaintiffs can

27  do so — the Court declines to rule on Defendants' challenges to Plaintiffs' remaining state law

28  claims at this time.  *See Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936) (stating that courts

1   have inherent power "to control the disposition of the causes on its docket with economy of time

2   and effort for itself, for counsel, and for litigants").

3       **IV.    CONCLUSION**

4           For the foregoing reasons, the Court hereby GRANTS County Defendants' Motion to

5   Dismiss (ECF No. 56) as follows:

6           1.  Plaintiffs' due process claim (Claim One) is DISMISSED without leave to amend;

7           2.  Plaintiffs' equal protection claim (Claim Two) is DISMISSED with leave to amend;

8           3.  Plaintiffs' *Monell* claim (Claim Three) is DISMISSED with leave to amend to the

9           extent Plaintiffs can plausibly allege an underlying equal protection claim; and

10          4.  In the interest of judicial economy, the Court declines to consider Defendants'

11          arguments regarding Plaintiffs' remaining state law claims, which depend on

12          supplemental jurisdiction to be heard in this Court.

13  Further, the Court DENIES RTA's Motion to Dismiss (ECF No. 57) as moot.

14          Plaintiffs may file an amended complaint consistent with this Court's ruling not later than

15  thirty (30) days from the electronic filing date of this Order.  Defendants shall file a responsive

16  pleading not later than twenty-one (21) days thereafter.  If Plaintiffs choose not to amend their

17  federal claims, the Court will decline to exercise supplemental jurisdiction over the remaining

18  state claims and dismiss the action.

19          IT IS SO ORDERED.

20  DATED:  September 2, 2021

21

22

23                                                  Troy L. Nunley
24                                                  United States District Judge

25

26

27

28

                                                14